Filed 1/31/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re M.B., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>              v.<br><br> M.B.,<br><br>     Defendant and Appellant. | A166408<br><br>(San Francisco County Super. Ct. No. JW186158) |

In this juvenile wardship proceeding under Welfare and Institutions Code[1] section 602, defendant M.B. admitted committing attempted murder and related enhancement allegations. The juvenile court committed M.B. to a secure youth treatment facility (SYTF) pursuant to section 875. The court specified a four-year "baseline term of confinement" (§ 875, subd. (b)), as well as a "maximum term of confinement" of 22 years to life (*id.*, subd. (c)). The court ordered that M.B.'s precommitment credits be applied against the maximum term of confinement (*id.*, subd. (c)(1)(C)).

On appeal, M.B. presents three main challenges to the court's orders, all pertaining to the court's rulings as to confinement terms and the

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

application of credits.[2]  First, he contends the court lacked jurisdiction to modify an earlier order setting the maximum term of confinement at four years.  Second, M.B. argues in the alternative that, even if the court had jurisdiction, the indeterminate 22-years-to-life maximum term it set is unauthorized, because the longest term permitted by statute is a determinate term of 22 years.  And, because the court had discretion to set a "maximum term of confinement" (§ 875, subd. (c)) that was *lower* than the 22-year statutory maximum, M.B. asserts that a remand is necessary for the court to exercise its discretion in selecting the maximum term of confinement.  Finally, in his third set of arguments, M.B. claims equal protection principles require that his precommitment credits be applied against his four-year baseline term (rather than against the maximum term of confinement).

In response, the Attorney General argues the court had jurisdiction to make the challenged rulings and properly applied M.B.'s precommitment credits.  As to the maximum term of confinement set by the court under section 875, the Attorney General concedes that the 22-years-to-life term is unauthorized and that the maximum term permitted by statute is 22 years.  The Attorney General also agrees the juvenile court had discretion to set a maximum term of confinement that is lower than the 22-year statutory maximum.[3]  The Attorney General contends, however, that this court should simply modify the maximum term of confinement to 22 years, and that no remand is necessary because it is clear from the record that the court intended to impose that term.

---

[2] M.B. does not challenge the court's decision to commit him to the SYTF.

[3] Based on this latter concession, we need not address M.B.'s argument that a construction of section 875 that precluded the exercise of such discretion would violate equal protection principles.

We conclude the court had jurisdiction to enter the challenged order, and we reject M.B.'s argument that equal protection principles require application of precommitment credits against the baseline term. We will modify the court's order to specify the maximum term of confinement is 22 years, and we will otherwise affirm.

## I. BACKGROUND

On November 3, 2021, the San Mateo County District Attorney filed an amended wardship petition (§ 602, subd. (a)) alleging M.B. had committed attempted willful, deliberate, and premeditated murder (Pen. Code, §§ 664, 187, subd. (a); count 1); aggravated mayhem (*id.*, § 205; count 2); five counts of assault with a semiautomatic firearm (*id.*, § 245, subd. (b); counts 3 through 7); discharge of a firearm with gross negligence (*id.*, § 246.3, subd. (a); count 8); and unlawful possession of a firearm by a minor (*id.*, § 29610; count 9).[4] On each count, the petition alleged M.B. was over 16 years old at the time of the offenses (§ 707, subd. (a)(1)).

As to the attempted murder count, the petition alleged M.B. personally used a firearm, personally and intentionally discharged a firearm, and personally and intentionally discharged a firearm causing great bodily injury (Pen. Code, § 12022.53, subds. (b)–(d)). The aggravated mayhem count was enhanced by an allegation that M.B. personally and intentionally discharged a firearm causing great bodily injury (*id.*, § 12022.53, subd. (d)). For all the assault with a firearm counts, the petition alleged M.B. personally used a

---

[4] In addition to the November 2021 petition at issue in this case, M.B. was the subject of earlier wardship proceedings beginning in 2018. We also note that, in April 2021, as part of the proceedings in the present case but prior to the filing of the operative amended petition, the San Mateo juvenile court denied a motion by the People to transfer the matter to adult court. The juvenile court found M.B. was a "fit and proper subject to remain in [the] Juvenile Justice System."

firearm (*id.*, § 12022.5, subd. (a)).  As to one of the assault with a firearm counts (count 3) and the attempted murder count, the petition alleged M.B. personally inflicted great bodily injury on the victim (*id.*, § 12022.7, subd. (a)).

The allegations in the wardship petition arose from a shooting on August 21, 2020, on a public bus in Daly City.[5]  M.B. was seated on the bus. When the victim boarded the bus, M.B. pulled out a handgun and fired five times at the victim, hitting him in the abdomen.  Other passengers were "in the line of fire of the discharged bullets."

M.B. and a female companion fled, running past the fallen victim and off the bus.  Police later found them "hiding in thick vegetation near Highway 35/Northbound Highway 1 onramp."  The victim "underwent emergency surgery for a single gunshot wound to the lower left abdomen, where 1/10th of his colon was removed, and he was treated for damage to his bowels."  M.B. was 16 years, 11 months old at the time of the shooting.

On November 3, 2021 (the same day the amended petition was filed), M.B. admitted committing attempted murder and the allegations in connection with that count that he was over 16 years old at the time of the offense, that he personally used a firearm, and that he personally inflicted great bodily injury, in exchange for the striking of the premeditation and deliberation allegation and the dismissal of the other counts and allegations.

On April 26, 2022, the San Mateo County Juvenile Court transferred the matter to San Francisco County for disposition based on M.B.'s residency in San Francisco.

---

[5] We derive this summary of the underlying incident from the probation officer's dispositional report.

4

At the August 24, 2022 dispositional hearing, the San Francisco County Juvenile Court redeclared wardship and committed M.B. to an SYTF. The court set M.B.'s baseline term of confinement at four years, commencing, by stipulation, on July 6, 2022. The court set the maximum term of confinement at 22 years to life. The court stated it would reserve ruling on the application of precommitment credits and the baseline term.

The court's written order issued after the August 24 hearing included the following findings:

"13. The maximum period of confinement that could be imposed pursuant to [section 875, subdivision (c)] is: 22 years to life.

"14. Having considered the individual facts and circumstances of the case, the court orders that the maximum period of confinement is: 22 years to life.

"15. The youth shall receive credit for time served in the amount to be determined by the court. This issue is reserved pending the court's determination (at the review hearing on 9/6/22).

"16. The baseline term of confinement based on the most serious recent adjudicated offense is 4 years, commencing 7/6/22 pursuant to the stipulation of the parties. The issue of baseline term is reserved by the court."

After the August 24 hearing, the parties filed briefs addressing the question of how M.B.'s precommitment credits should be applied. M.B. argued the credits should be applied against the baseline term of confinement, while the prosecutor contended the credits should instead be applied against the maximum term of confinement. The parties' briefs

focused in part on the decision in *In re Ernesto L.* (2022) 81 Cal.App.5th 31 (*Ernesto L.*), a case we discuss further below.

At a hearing on September 14, 2022, the court ruled M.B.'s precommitment credits would be applied against his four-year baseline term in the SYTF. The court also modified certain portions of its August 24 order, specifically findings 13 and 14 (which, as noted, dealt with the "maximum period of confinement"). The court's new finding 13 states the "maximum period of confinement to which the minor is exposed by statute is 22 years to life." The new finding 14 states that, "[h]aving considered the individual facts and circumstances of the case," the "maximum custodial term is four years."

The next day (September 15, 2022), the court—on its own motion—stayed the September 14 "order regarding credit for time served" and set a hearing for reconsideration of the order. The court's stay order stated: "The issue of interest to the court is whether the recent opinion in the case of *Ernesto L.* is relevant to the 'maximum term of confinement' described in [section 875]."

On September 26, 2022, defense counsel filed a written objection to the court's reconsideration of the September 14 order applying M.B.'s precommitment credits to the baseline term. Counsel argued that, because the order was valid and had been entered in the minutes, the court had lost jurisdiction to modify it.

On September 27, 2022, after a hearing, the court vacated the September 14 order and reinstated the August 24 order (including findings 13 and 14 pertaining to the "maximum period of confinement"). The court applied M.B.'s precommitment custody credits against "the maximum period of confinement as described under [section 875, subdivision (c)]." In

6

response to defense counsel's objection, the court concluded it had power to act because its ruling on September 14 had resulted in an unauthorized disposition.

M.B. appealed the August 24 and September 27 orders.[6]

## II. DISCUSSION

### A. *Additional Background: Juvenile Justice Realignment, Section 875, and the Terms Imposed by the Juvenile Court*

Until recently, the Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ) was "the state's most restrictive placement for its most severe juvenile offenders . . . ." (*In re Miguel C.* (2021) 69 Cal.App.5th 899, 902; see *In re J.B.* (2022) 75 Cal.App.5th 410, 413.)[7] "[I]n 2020 the Legislature passed 'juvenile justice realignment' through Senate Bill No. 823 (2019–2020 Reg. Sess.) (Stats. 2020, ch. 337)." (*In re J.B.,* at p. 413, fn. 3.) The Legislature's juvenile justice realignment program has included the transfer of DJJ's responsibilities to California's counties beginning on July 1, 2021 (§ 736.5, subd. (a)) and the closure of DJJ on June 30, 2023 (*id.,* subd. (e)). The stated purpose of these changes is "[t]o ensure that justice-involved youth are closer to their families and communities and receive age-appropriate treatment." (Stats. 2020, ch. 337, § 1(b); *In re Miguel C.,* at p. 907.)

---

[6] We will refer to the three orders entered in August and September 2022 as the August 24 order, the September 14 order, and the September 27 order.

[7] "The DJJ is also known as the Department of Corrections and Rehabilitation, Division of Juvenile Facilities (DJF). [Citation.] DJJ and DJF are used interchangeably in case law." (*In re J.B., supra,* 75 Cal.App.5th at p. 413, fn. 1.) "The DJJ was previously known as the California Youth Authority." (*In re Miguel C., supra,* 69 Cal.App.5th at p. 906, fn. 4.)

As part of the legislative shift from DJJ to county-level commitments, section 875 took effect on May 14, 2021 with the enactment of Senate Bill No. 92 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 18, § 12). Section 875 provides that, commencing July 1, 2021, a juvenile court may commit a ward to an SYTF under certain circumstances. (§ 875, subd. (a).)[8] The court must set both a "baseline term of confinement" (baseline term) (*id.*, subd. (b)) and a "maximum term of confinement" (*id.*, subd. (c)). Subdivision (b) of section 875 states the baseline term is to be "based on the most serious recent offense for which the ward has been adjudicated" and "shall represent the time in custody necessary to meet the developmental and treatment needs of the ward and to prepare the ward for discharge to a period of probation supervision in the community." (*Id.*, subd. (b)(1).)

Pending the development of offense-based classifications by the Judicial Council, the court must set the baseline term using the "discharge consideration date guidelines" applied by the DJJ prior to its closure. (§ 875, subd. (b)(1), citing Cal. Code Regs., tit. 9, §§ 30807–30813.) Under those guidelines, attempted murder is a "category two" offense, resulting in a baseline term of four years. (Cal. Code Regs., tit. 9, §§ 30807, subd. (a), 30808, subd. (a)(12).) The court may "modify the initial baseline term with a deviation of plus or minus six months." (§ 875, subd. (b)(1).) The baseline term is also subject to modification in later progress review hearings. (*Id.*, subds. (b)(1), (e).) As noted, the court here set a four-year baseline term.

Subdivision (c) of section 875 requires that the court also set a "maximum term of confinement for the ward based upon the facts and circumstances of the matter or matters that brought or continued the ward

---

[8] As noted, M.B. does not challenge the court's decision to commit him to an SYTF.

under the jurisdiction of the court and as deemed appropriate to achieve rehabilitation." (§ 875, subd. (c)(1).) Under section 875, subdivision (c)(1), the maximum term of confinement is "the longest term of confinement in a facility that the ward may serve subject to" three limitations. (*Ibid.*) First, a ward committed to an SYTF is not to be held in secure confinement beyond 23 years of age (or 25 years of age for more serious offenses) or two years from the date of commitment, whichever occurs later. (*Id.*, subd. (c)(1)(A).) Second, the maximum term of confinement "shall not exceed the middle term of imprisonment that can be imposed upon an adult convicted of the same offense or offenses," with additional directives as to how a court is to proceed if it elects to aggregate the period of confinement on multiple counts or multiple petitions. (*Id.*, subd. (c)(1)(B); accord, § 726, subd. (d)(1), (3), (5) [this cap applies when a ward is placed in "physical confinement," which includes placement in an SYTF under § 875].) Third, section 875, subdivision (c) specifies that "[p]recommitment credits for time served must be applied against the maximum term of confinement as set pursuant to this subdivision." (*Id.*, subd. (c)(1)(C).)

Subdivision (c)(2) of section 875 additionally provides: "For purposes of this section, 'maximum term of confinement' has the same meaning as 'maximum term of imprisonment,' as defined in" section 726, subdivision (d)(2).[9] In turn, section 726, subdivision (d)(2) defines

---

[9] Subdivision (c) of section 875 provides in full:

"(1) In making its order of commitment, the court shall additionally set a maximum term of confinement for the ward based upon the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the court and as deemed appropriate to achieve rehabilitation. The maximum term of confinement shall represent the

9

" 'maximum term of imprisonment' " to mean "the middle of the three time periods set forth in paragraph (3) of subdivision (a) of Section 1170 of the Penal Code, but without the need to follow the provisions of subdivision (b) of Section 1170 of the Penal Code or to consider time for good behavior or participation pursuant to Sections 2930, 2931, and 2932 of the Penal Code, plus enhancements which must be proven if pled."

The parties agree that since M.B. admitted committing attempted murder (but did not admit the attempted murder was willful, deliberate, and premeditated), his maximum term of confinement could not exceed 22 years

---

longest term of confinement in a facility that the ward may serve subject to the following:

"(A) A ward committed to a secure youth treatment facility under this section shall not be held in secure confinement beyond 23 years of age, or two years from the date of the commitment, whichever occurs later. However, if the ward has been committed to a secure youth treatment facility based on adjudication for an offense or offenses for which the ward, if convicted in adult criminal court, would face an aggregate sentence of seven or more years, the ward shall not be held in secure confinement beyond 25 years of age, or two years from the date of commitment, whichever occurs later.

"(B) The maximum term of confinement shall not exceed the middle term of imprisonment that can be imposed upon an adult convicted of the same offense or offenses. If the court elects to aggregate the period of physical confinement on multiple counts or multiple petitions, including previously sustained petitions adjudging the minor a ward within Section 602, the maximum term of confinement shall be the aggregate term of imprisonment specified in subdivision (a) of Section 1170.1 of the Penal Code, which includes any additional term imposed pursuant to Section 667, 667.5, 667.6, or 12022.1 of the Penal Code, and Section 11370.2 of the Health and Safety Code.

"(C) Precommitment credits for time served must be applied against the maximum term of confinement as set pursuant to this subdivision.

"(2) For purposes of this section, 'maximum term of confinement' has the same meaning as 'maximum term of imprisonment,' as defined in paragraph (2) of subdivision (d) of Section 726."

10

under sections 875, subdivision (c)(1)(B) and 726, subdivision (d)(2). The 22-year maximum consists of the seven-year midterm for attempted murder (Pen. Code, §§ 664, subd. (a), 187, subd. (a), 190), plus 10 years for the firearm enhancement (*id.*, § 12022.53, subd. (b)) and three years for the great bodily injury enhancement (*id.*, § 12022.7, subd. (a)), plus one year each (one-third the midterm) for findings in prior proceedings that M.B. committed assault with a deadly weapon and second degree robbery (*id.*, §§ 245, subd. (a)(1), 213, subd. (a)(2), 1170.1, subd. (a)).

As noted, the court instead determined (based on the prosecutor's calculation and without objection by the defense) that the maximum term that could be imposed was 22 years *to life*.[10] This statutory maximum is stated or incorporated in each of the court's orders (as finding 13). And, within that limitation, the court, based on consideration of the "individual facts and circumstances of the case" (as finding 14), initially imposed a "maximum period of confinement" of 22 years to life at the August 24 hearing; the court replaced that term with a "maximum custodial term" of four years at the September 14 hearing; and the court reinstated the 22-years-to-life maximum term of confinement at the September 27 hearing.

## B. *The Court Had Authority to Modify Its Orders*

The parties rely on *In re Eugene R.* (1980) 107 Cal.App.3d 605 (*Eugene R.*), as well as cases involving adult criminal sentencing, to contend

---

[10] The prosecutor reached this total by including in the calculation the term of seven years to life that applies to attempted premeditated murder (Pen. Code, §§ 664, subd. (a), 3046, subd. (a)), rather than the seven-year midterm that applies to attempted murder (*id.*, §§ 664, subd. (a), 187, subd. (a), 190). It appears counsel and the San Francisco Juvenile Court (which, as noted, received the case for disposition when it was transferred from San Mateo County) were unaware that M.B. had not admitted the premeditation allegation.

the juvenile court lacked jurisdiction to make certain modifications to its disposition orders (although they differ as to which changes were permissible). We disagree and conclude the juvenile court had authority to make the challenged modifications.

### 1. The Parties' Arguments

M.B. argues the court lacked jurisdiction on September 27 to modify the four-year maximum term of confinement it set at the September 14 hearing (finding 14), because that term was "lawful" and M.B. "had already begun his SYTF commitment." He argues the court's earlier modification of the August 24 order on September 14 *was* permissible, because the 22-years-to-life maximum term of confinement in the August 24 order was an unauthorized term. M.B. urges this court to reverse the September 27 order and direct the juvenile court to reinstate the September 14 order.[11]

The Attorney General counters that on September 27 the court "properly vacated the September 14 order because the portion of that order changing the maximum term of confinement was void for lack of fundamental jurisdiction"—i.e., the court lacked jurisdiction on September 14 to change the August 24 order setting the maximum term of confinement at 22 years to life. The Attorney General bases his jurisdictional argument on the fact M.B. began his SYTF commitment on August 24.

Although acknowledging the 22-years-to-life maximum term of confinement set in the August 24 order was unauthorized, the Attorney General contends that defect did not make the August 24 order facially void (instead making it only voidable), and therefore that portion of the August 24

---

[11] M.B. notes that, if the September 14 order is reinstated, the 22-years-to-life "maximum exposure term" in that order (finding 13) should be modified to 22 years.

order was not modifiable on September 14.  In the Attorney General's view, the September 14 order purporting to change the maximum term of confinement was void, and the court therefore had jurisdiction on September 27 to vacate the void September 14 order and reinstate the August 24 order.[12]

## 2. Section 775 Authorizes Juvenile Courts to Modify Prior Orders

Section 775—a statute that neither party cites—authorizes a juvenile court presiding over a delinquency proceeding to modify its prior orders. Section 775 states:  "Any order made by the court in the case of any person subject to its jurisdiction may at any time be changed, modified, or set aside, as the judge deems meet and proper, subject to such procedural requirements as are imposed by this article."

The statute confers authority to make both clerical and substantive changes.  "Under section 775, 'the juvenile court may modify an order that contains a clerical error, [and] may also reconsider the substance of a previous order the court considers to have been erroneously, inadvertently or improvidently granted.' "  (*In re K.W.* (2020) 54 Cal.App.5th 467, 473 (*K.W.*).) The juvenile court's authority continues after disposition.  (*In re D.N.* (2022) 14 Cal.5th 202, 207 [addressing challenge to juvenile court orders governing a minor who was placed on probation; "After disposition, the juvenile court retains the authority to modify its orders regarding a minor under its jurisdiction (§ 775), and a parent, the minor through a guardian ad litem, or another person having an interest in the minor may petition the court for a modification (§ 778)."].)

---

[12] The Attorney General agrees that, on appeal, the maximum term of confinement should be reduced to 22 years.

13

We and other appellate courts construing a parallel statute that applies in juvenile dependency proceedings—section 385—have held a juvenile court may exercise its modification authority sua sponte. (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1160 [construing § 385; "A juvenile court has the authority to change, modify, or set aside a previous order sua sponte if it decides that a previous order was 'erroneously, inadvertently or improvidently granted.' "]; accord, *Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 116, 110 (*Nickolas F.*) [construing § 385].) The wording of sections 775 and 385 is "word-for-word identical," so "authorities construing section 385 are persuasive in construing section 775." (*K.W., supra,* 54 Cal.App.5th at p. 473.) We conclude sua sponte modifications are permissible under section 775.

As noted, section 775 states the authority to modify a prior order is "subject to such procedural requirements as are imposed by this article," i.e., article 20 of the Welfare and Institutions Code. Sections 776 and 779.5 are the sections in article 20 that appear to directly restrict the court's authority to sua sponte modify a disposition order committing a ward to a county SYTF.

Section 776 provides: "No order changing, modifying, or setting aside a previous order of the juvenile court shall be made either in chambers, or otherwise, unless prior notice of the application therefor has been given by the judge or the clerk of the court to the probation officer and prosecuting attorney and to the minor's counsel of record, or, if there is no counsel of record, to the minor and his parent or guardian." Read in conjunction with section 775, this section indicates that the juvenile court may modify its orders if it gives prior notice to the interested parties.

14

Here, in our view, the court complied with section 776's notice requirement when it entered the September 27 order now challenged in this appeal, including its ruling vacating the maximum term of confinement set in the September 14 order and reinstating the August 24 order. As noted, in a written order filed on September 15 (one day after entering the September 14 order), the court notified the parties it was staying that order and setting a review hearing to reconsider its findings. The court stated in part that it was interested in whether a specified case (*Ernesto L.*) was relevant to the maximum term of confinement under section 875. And the court then allowed expansive argument on the issue at the September 27 hearing.[13]

Section 779.5 (the other relevant section in article 20) states the standard that must be met, and the procedures that must be followed, to "modify or set aside" an order of commitment to an SYTF, specifically to end a ward's placement in an SYTF. Section 779.5 states: "The court committing a ward to a secure youth treatment facility as provided in Section 875 may thereafter modify or set aside the order of commitment upon the written application of the ward or the probation department and *upon a showing of good cause that the county or the commitment facility has failed, or is unable to, provide the ward with treatment, programming, and education* that are

_____

[13] As to the court's earlier modification—its September 14 change to the August 24 order—the court similarly entertained substantial oral argument at the September 14 hearing. It is true that, on August 24, the court only specifically reserved ruling on the questions of precommitment credits and the baseline term of confinement. We need not determine whether the court gave adequate notice, prior to the September 14 hearing, that it might modify the *maximum term of confinement*. Any noncompliance with section 776's notice requirement before the court modified the maximum term of confinement at the September 14 hearing (from 22-years-to-life to four years) was rendered harmless by the court's subsequent restoration of the 22-years-to-life maximum term at the September 27 hearing.

consistent with the individual rehabilitation plan described in subdivision (d) of Section 875, *that the conditions under which the ward is confined are harmful to the ward*, or *that the juvenile justice goals of rehabilitation and community safety are no longer served by continued confinement of the ward in a secure youth treatment facility*.  The court shall notice a hearing in which it shall hear any evidence from the ward, the probation department, and any behavioral health or other specialists having information relevant to consideration of the request to modify or set aside the order of commitment. The court shall, at the conclusion of the hearing, make its findings on the record, including findings as to the custodial and supervision status of the ward, based on the evidence presented."  (Italics added.)

The language of section 779.5 makes clear it establishes the standard and procedures for recalling an order of commitment to an SYTF, i.e., the applicant (the ward or the probation department) must show the SYTF is not meeting the ward's rehabilitative needs.  (§ 779.5 [requiring a showing that the facility is not providing appropriate "treatment, programming, and education"; that the conditions of confinement are "harmful to the ward"; or that the "goals of rehabilitation and community safety are no longer served by continued confinement" in the SYTF].)  We do not read section 779.5 as providing for application of these unique standards when a juvenile court exercises its more general modification authority under section 775 to revise an SYTF commitment order to correct what it has recognized to be a legal error.  In our view, as discussed, under section 775, the court may correct clerical errors *and* may reconsider substantive aspects of the order such as the maximum term of confinement, if the court determines (as it did almost immediately in the present case) that those orders were " 'erroneously,

inadvertently or improvidently granted.'" (*K.W., supra,* 54 Cal.App.5th at p. 473 [describing court's authority under § 775].)

Other sections in article 20 of the Welfare and Institutions Code also address modification of a court's order, but they do not change our conclusion the court had authority here to modify its order sua sponte to reinstate the maximum term of confinement it had originally set. (E.g., §§ 777 [procedures applicable for changing order based on alleged probation violation], 778 [petition procedure to be followed when a "parent or other person having an interest in a child who is a ward of the juvenile court or the child himself or herself through a properly appointed guardian" seeks to modify a prior order "upon grounds of change of circumstance or new evidence"], 779 [procedures for modifying an order committing a ward to the Youth Authority].)

### 3. The Juvenile Court Did Not Lose Jurisdiction to Modify Its Orders

In support of their arguments about whether the juvenile court had jurisdiction at certain points in the proceeding, the parties rely primarily on case law addressing adult criminal sentencing. In the adult criminal context, our Supreme Court has explained: "Under the general common law rule, a trial court is deprived of jurisdiction to resentence a criminal defendant once execution of the sentence has commenced." (*People v. Karaman* (1992) 4 Cal.4th 335, 344.) This general rule is subject to statutory exceptions allowing later resentencing in certain circumstances. (E.g., Pen. Code, §§ 1172.1, 1170.18, 1170.126; see *Karaman*, at pp. 351–352 [Pen. Code, § 1170, former subd. (d), the predecessor to Pen. Code, § 1172.1, "creates a statutory exception to the common law rule that the trial court loses jurisdiction to resentence a defendant upon commencement of execution of his or her sentence"].)

17

Noting M.B. had begun his SYTF commitment when the juvenile court modified its dispositional orders on September 14 and September 27, the parties rely on *Eugene R.*, *supra*, 107 Cal.App.3d 605 to argue the court no longer had jurisdiction to make certain of the challenged modifications. In *Eugene R.*, the juvenile court committed the minor to the Youth Authority and set the maximum term of confinement at three years, 10 months, with credit for 124 days served. (*Id.* at p. 611.) The court then gave notice on its own motion that it would hold a hearing to review the minor's " 'maximum commitment time and days in custody.' " (*Ibid.*)

The appellate court in *Eugene R.* held the juvenile court lacked jurisdiction to modify the original commitment order. (*Eugene R.*, *supra*, 107 Cal.App.3d at p. 612.) The *Eugene R.* court cited cases holding that in adult criminal matters, "where a defendant has commenced serving the sentence, the court has no jurisdiction to vacate or modify the sentence as pronounced and formally entered in the minutes in an attempt to revise its deliberately exercised judicial discretion unless the sentence was improper on its face." (*Ibid.*)

The *Eugene R.* court then explained its reasoning for applying this rule to juvenile delinquency proceedings, stating in part: "The foregoing procedural rule should also apply to juvenile matters. Although denominated as civil in nature, the courts have long recognized and emphasized that original section 602 and supplementary juvenile proceedings are quasi-criminal in nature. Ramifications of a section 602 hearing include a possible finding that the alleged criminal conduct is true, resulting in a substantial loss of personal freedom." (*Eugene R.*, *supra*, 107 Cal.App.3d at p. 612.) The *Eugene R.* court also noted that, under the California Rules of Court, the general rules governing criminal appeals apply to juvenile appeals, to enable

18

the expeditious handling of juvenile matters. (*Id.* at pp. 612–613.) The court stated: "When we apply the jurisdictional rule in controversy to juvenile proceedings, the cited legislative policy is promoted and the criminal appellate rules are followed. To conclude otherwise and allow collateral modification based upon another judge's view of abuse of discretion would inevitably promote 'judge-shopping' and sanction delay." (*Id.* at p. 613.)

The *Eugene R.* court rejected the Attorney General's argument in that case that the juvenile court could modify the judgment pursuant to section 775 at any time that the court had continuing jurisdiction over the minor, stating: "Granted the juvenile court has continuing jurisdiction over the minor; however, such jurisdiction must be properly activated by petition or application and cannot be exercised on the court's own motion without procedural statutory authority." (*Eugene R.*, *supra*, 107 Cal.App.3d at p. 613.)

In support of its conclusion that section 775 does not authorize a juvenile court to modify its orders sua sponte, the *Eugene R.* court cited the language of section 775 and stated: "Article 20, sections 775 through 779 read together, does not authorize the juvenile court to modify a previous order on its own motion. If such power was inherent or provided for by section 775, then the Judicial Council and the Supreme Court would not have enacted [California Rules of Court,[14] former rule 1391(d); now rule 5.560(f)] in the narrow manner written providing for the correction of only clerical

---

[14] Rule references are to the California Rules of Court.

errors in judgments, orders and the record by the court at any time on its own motion."[15] (*Eugene R.*, *supra*, 107 Cal.App.3d at p. 613.)

We decline to follow *Eugene R.* For three reasons, we think it is a mistake in the juvenile context simply to borrow the common law jurisdictional prohibition against revisiting an adult criminal sentence once the sentence has commenced.

First, we note that juvenile delinquency proceedings and adult criminal proceedings serve different purposes. "The purpose of juvenile proceedings remains markedly different from that of adult proceedings. The state's purpose in juvenile proceedings is a rehabilitative one distinguishable from the criminal justice system for adults, which has a purely punitive purpose separate from its rehabilitative goals. [Citation.] The proceedings are intended to secure for the minor such care and guidance as will best serve the interests of the minor and the state and to impose upon the minor a sense of responsibility for his or her actions. The purpose of imprisonment pursuant to criminal law is punishment. [Citation.] While part of the juvenile justice system does include punishment in certain cases, it does not change the primary purpose of juvenile proceedings from that of preserving and promoting the welfare of the child. In juvenile law, '. . . the reference to punishment did not alter the overall rehabilitative aspect of the juvenile justice system.' " (*In re Myresheia W.* (1998) 61 Cal.App.4th 734, 740–741.) In light of these differences, it does not follow that the rule prohibiting the court from modifying a criminal sentence that has commenced being served applies to juvenile proceedings simply because juvenile proceedings are

---

[15] Rule 5.560(f) provides: "Clerical errors in judgments, orders, or other parts of the record may be corrected by the court at any time on the court's own motion or on motion of any party and may be entered nunc pro tunc."

quasi-criminal in nature or because a rule of court "expressly provide[d] for the application of the general rules relating to criminal appeals to all juvenile appeals." (*Eugene R.*, *supra*, 107 Cal.App.3d at p. 612.)

Second, we are not persuaded by *Eugene R.*'s conclusion that section 775 does not authorize a court to sua sponte modify its order, a conclusion *Eugene R.* reached on the ground that the language in former rule 1391(d) (currently rule 5.560(f)) would not have been enacted in the "narrow manner written providing for the correction of only clerical errors in judgments . . . ." (*Eugene R.*, *supra*, 107 Cal.App.3d at p. 613.) The *Eugene R.* court thus suggests that if the juvenile court had jurisdiction to modify its orders sua sponte, the rule would have been written to provide for such modifications. But since the express language of section 775 already allowed the court to modify its orders with respect to a juvenile over whom it had jurisdiction, it was unnecessary to include this provision in rule 5.560(f). Moreover, the correction of clerical errors is a ministerial task that does not require the exercise of discretion. Modifications in a juvenile court's orders that involve more than the correction of clerical error may, however, involve an exercise of discretion and thus require notice to the parties and the opportunity to be heard. This may explain why the court's power to correct these two different types of errors are not contained in the same rule or statute. In any event, it does not follow from rule 5.560(f) that section 775 does not mean what it says, that "[a]ny order made by the court in the case of any person subject to its jurisdiction may at any time be changed, modified, or set aside . . . ." (§ 775.)

Third, the *Eugene R.* holding was disavowed, or at least limited, in the closely analogous juvenile dependency context by the court that originally issued it. (See *Nickolas F., supra,* 144 Cal.App.4th at pp. 115–116, fn. 20.) In

21

*Nickolas F.*, the court held that, under section 385 (the analogue of section 775 that applies in dependency proceedings), "the juvenile court has the authority . . . to change, modify or set aside its prior orders sua sponte" (*Nickolas F.*, at p. 116), if it provides the parties with notice and an opportunity to be heard (*id.* at p. 98). In reaching this conclusion, the *Nickolas F.* court relied in part on the Supreme Court's decision in *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1104–1108, which addressed the authority of a court to modify its own interim orders. (*Nickolas F.*, at pp. 98, 110–111.)

In a footnote, the *Nickolas F.* court noted its prior holding in *Eugene R.* that in delinquency matters, "section 775 limited the court's authority to modify its previous orders sua sponte to the correction of clerical error . . . ." (*Nickolas F.*, *supra*, 144 Cal.App.4th at pp. 115–116, fn. 20.) Noting sections 385 and 775 are identical to each other, the *Nickolas F.* court stated *Eugene R.*'s holding "has been called into question" by *Le Francois* and other authority. (*Nickolas F.*, at pp. 115–116, fn. 20.) The *Nickolas F.* court concluded: "To the extent *Eugene R.* is interpreted to apply to dependency cases, we decline to follow the holding." (*Ibid.*)

We agree the interpretation of sections 775 and 385 should align on this point. For the reasons discussed above, we conclude section 775, like section 385, confers authority on a juvenile court to modify its prior orders sua sponte, after providing the parties with notice and an opportunity to be heard (see *Nickolas F.*, *supra*, 144 Cal.App.4th at p. 98), a view we have already adopted with respect to section 385 (*In re G.B.*, *supra*, 227 Cal.App.4th at p. 1160). (See *K.W.*, *supra,* 54 Cal.App.5th at p. 473 [§§ 775 and 385 are identically worded, so "authorities construing section 385 are persuasive in construing section 775"].)

At oral argument, prompted by the tentative opinion we issued in this case, M.B.'s counsel urged this court to adopt in part the result reached in *Eugene R.*, and to do so based on double jeopardy principles. Specifically, counsel argued that, once a juvenile commitment has begun, double jeopardy protections bar a juvenile court from modifying the commitment order in a way that increases the ward's term of confinement. According to counsel, that is what occurred here when the court in its September 27 order changed a four-year maximum term of confinement (which it had specified on September 14) back to the 22-years-to-life maximum term of confinement that it had originally imposed on August 24.[16]

We do not agree that double jeopardy principles require limiting the statutory authority of a juvenile court under section 775 to modify a disposition or commitment order. "The 'protection against double jeopardy applies to juvenile offenders as well as to adults.' [Citation.] Jeopardy attaches in a juvenile delinquency proceeding 'when the first witness is sworn at the adjudicatory phase of the jurisdictional hearing.' " (*In re Pedro C.* (1989) 215 Cal.App.3d 174, 180; see *In re Abdul Y.* (1982) 130 Cal.App.3d 847, 856 [adjudicatory hearing is " 'one at which a minor is exposed to a finding of truth of allegations contained in a petition filed pursuant to [§ 602]' "].) But "[m]odification of a dispositional order in the exercise of the court's continuing jurisdiction over a ward does not constitute double jeopardy." (*In re Glen J.* (1979) 97 Cal.App.3d 981, 987; see *In re Steven S.* (1999) 76 Cal.App.4th 349, 353; *Pedro C.*, at p. 181.)

---

[16] In counsel's view, the court's prior change (on September 14) did not violate double jeopardy, because on that occasion the court reduced the original 22-years-to-life maximum term of confinement to four years.

Here, M.B. was not subjected to a further adjudicatory hearing. Neither the attempted murder count (which M.B. admitted during earlier proceedings in San Mateo County) nor the other counts alleged against him (which were dismissed at that time as part of the negotiated disposition) were relitigated. Instead, the juvenile court made modifications only to its dispositional order. We find no double jeopardy violation on this record.

For the foregoing reasons, we conclude the juvenile court had authority under section 775 to modify its SYTF commitment order and to enter the September 27 order that is now challenged in this appeal. The scope of this power to revisit prior orders extends to matters of form and substance. As noted above, a juvenile court may correct clerical errors and " 'may also reconsider the substance of a previous order the court considers to have been erroneously, inadvertently or improvidently granted.' " (*K.W.*, supra, 54 Cal.App.5th at p. 473.) But the court's authority is not unlimited. The statement in section 775 that a modification is permissible when the judge deems it "meet and proper" has been construed as a requirement that "the judge must find good cause" (*K.W.*, at p. 473). "And that finding is subject to appellate review. It has been held that 'the court must have substantial reasons' for modifying a prior order under section 775; should it do so, 'the question . . . would be of whether or not the court had abused its discretion . . . .' " (*Id.* at pp. 473–474.) Here, it is clear from the record that, when the court reconsidered and modified certain aspects of its dispositional order, it was simply making a diligent effort to comply with the law (i.e., a relatively new statute, section 875). The court acted promptly, and it gave the parties

notice and an ample opportunity to be heard. Any good cause requirement is fully satisfied.[17]

Some courts, to be sure, have stated that, " '[d]espite its apparent breadth, section 775 "does not authorize the court to make substantive changes or modifications *that otherwise exceed the court's jurisdiction.*" ' " (*In re Hunter W.* (2023) 88 Cal.App.5th 358, 370, italics added.) This jurisdictional limiting principle does not affect our conclusion here. There is no question the juvenile court had a statutory jurisdictional basis to act. In *Hunter W.*, the court held that section 775 and related statutes *did* give the juvenile court "continued jurisdiction over the matter," although they did not alter principles of finality for purposes of retroactivity of ameliorative legislation under *In re Estrada* (1965) 63 Cal.2d 740. (*Hunter W.*, at pp. 365, 367–368, 371 [for *Estrada* purposes, a dispositional order in a juvenile delinquency case is final once direct review of that order has been exhausted].) No such issue is presented here—no party sought retroactive application of an ameliorative statute after the disposition order became final. Instead, as noted, the juvenile court modified the disposition order on its own motion and did so shortly after the order was entered.

---

[17] In the context of an adjudication made at a jurisdictional hearing, where a court must make true findings if the allegations have been proven beyond a reasonable doubt, the *K.W.* court held "section 775 does not give the juvenile court the authority to reduce or modify an adjudication, in the absence of circumstances showing that the original adjudication was somehow flawed—e.g., ineffective assistance of counsel or new evidence." (*K.W.*, *supra*, 54 Cal.App.5th at p. 474.) The court did not make that sort of modification here. Instead, the court modified aspects of its dispositional order, specifically its rulings pertaining to the maximum term of confinement and the application of credits. In any event, for the reasons we have discussed, we conclude any good cause requirement is satisfied under the circumstances here.

Because the court had jurisdiction to enter the September 27 order reinstating the August 24 order, we now turn to M.B.'s remaining challenges to those orders.

## C. *The Maximum Term of Confinement*

As an alternative to his jurisdictional argument, M.B. contends that the court abused its discretion in setting the 22-years-to-life maximum term of confinement under section 875, subdivision (c) and that the case must be remanded for a new dispositional hearing.[18]  The Attorney General counters that the maximum term of confinement need only be modified to 22 years and that no remand is needed.

As discussed, the parties agree the 22-years-to-life maximum term of confinement set by the court was unauthorized because M.B. did not admit the attempted murder was premeditated.  The maximum term permitted by statute was instead 22 years.  (§ 875, subd. (c)(1)(B).)

The parties also recognize the court had discretion under section 875, subdivision (c) to set a maximum term of confinement for M.B. that was less than the 22-year maximum allowable by statute.  Section 875, subdivision (c)(1) states the maximum term of confinement is to be "based upon the *facts and circumstances* of the matter or matters that brought or continued the ward under the jurisdiction of the court and as deemed appropriate to achieve rehabilitation."  (Italics added.)  The maximum term of confinement "shall not exceed" the middle term of imprisonment that could be imposed on an adult convicted of the same offense.  (§ 875, subd. (c)(1)(B).)

---

[18] M.B. does not challenge the four-year baseline term set by the court under section 875, subdivision (b).

Similar language in section 731, which governed commitments to the DJJ prior to its closure,[19] has been held to mean a juvenile court has discretion to set a maximum term of confinement that is shorter than the term that could be imposed on an adult convicted of the same offense. (*In re Julian R.* (2009) 47 Cal.4th 487, 495 (*Julian R.*) ["Succinctly put, the juvenile court must consider the crime's relevant 'facts and circumstances' in determining whether the minor's maximum commitment period should be equal to or less than the maximum confinement term for an adult."]; § 731, subds. (b), (c).) We agree with the parties that section 875 likewise allows a juvenile court to impose a maximum term of confinement in an SYTF that is equal to or less than the middle term of imprisonment that could be imposed on an adult convicted of the same offense. (§ 875, subd. (c)(1).)[20] Here, the court had discretion to set a maximum term of confinement that was equal to or less than the 22-year statutory maximum.[21]

---

[19] Section 731 states it will remain in effect until the final closure of the DJJ (§ 731, subd. (c)), which occurred on June 30, 2023 (§ 736.5, subd. (e)).

[20] Section 875, subdivision (c) may not be free from ambiguity on this point. As discussed above, *subdivision (c)(2)* of section 875 appears to equate the " 'maximum term of confinement' " (by reference to § 726, subd. (d)(2)) with the maximum term of exposure permitted by statute (i.e., the middle term that would apply to an adult, with specified adjustments). But when read in conjunction with *subdivision (c)(1)* of section 875—which expressly states the maximum term of confinement is to be based on the relevant "facts and circumstances" (*id.*, subd. (c)(1)) and "shall not exceed" the middle term (*id.*, subd. (c)(1)(B))—we conclude the statute confers discretion on the juvenile court to impose a maximum term of confinement that is equal to or less than the middle term that could be imposed on an adult.

[21] And, of course, M.B.'s actual time spent in confinement will likely be shorter, as it is subject to the separate cap in section 875, subdivision (c)(1)(A) prohibiting confinement "beyond 25 years of age, or two years from the date of commitment, whichever occurs later."

27

The parties dispute whether the juvenile court understood the scope of its discretion in setting the maximum term of confinement. In our view, the record supports the Attorney General's position that the juvenile court understood and exercised its discretion in setting that term.

As the Attorney General points out, the court stated in its hand-signed August 24 order (which it reinstated on September 27) that it *had* "considered the individual facts and circumstances of the case" in setting the maximum term of confinement (finding 14). This express statement supports a conclusion on review that the court did exercise its discretion under the statute in setting the maximum term of confinement. (See *Julian R.*, *supra,* 47 Cal.4th at pp. 492, 499 [under § 731, even on a silent record, reviewing court will presume juvenile court "exercised its discretion in setting a maximum period of physical confinement that was measured against both the ceiling set by the maximum adult prison term and a possibly lower ceiling set by the relevant 'facts and circumstances' "]; *id.* at p. 499, fn. 4 [noting that, in light of a newly revised Judicial Council form requiring the juvenile court to acknowledge its consideration of the crime's facts and circumstances, "in the future a court's exercise of its discretion will be evident"].)

We also note that, during the third hearing on the matter (on September 27), the prosecutor stated section 875, subdivision (c) required the court to first determine the total amount of time M.B. could spend in physical confinement (finding 13) and then exercise its discretion to impose all or a portion of that time (finding 14). This was not a case in which either party argued the court *was required* to set a maximum term of confinement that was identical to the maximum term allowable by statute.

Finally, although this fact is less directly relevant to the court's determination of the maximum term of confinement under section 875,

28

subdivision (c), the court stated, both orally and in its written order, that it had considered M.B.'s background and individual circumstances in determining under section 875, subdivision (a) that an SYTF commitment was appropriate. These circumstances included the severity of the offense; M.B.'s delinquent history; whether the programming, treatment, and education in an SYTF would be appropriate for his needs; whether a less restrictive placement could achieve the goals of rehabilitation and community safety; and M.B.'s "age, his developmental maturity, his mental and emotional health, sexual orientation, identity and expression and any disability or special needs affecting the safety or suitability committing [M.B.] to a term of confinement in a Secure Youth Treatment Facility." (See § 875, subd. (a).) The court thus had in mind factors that may also have been relevant when it set a maximum term of confinement based on the "facts and circumstances" of the case.

M.B. argues the record of the oral proceedings at the three hearings reflects the juvenile court did not clearly understand the different terms it needed to impose under section 875. In particular, M.B. suggests the court's statements show it did not understand it had the discretion to set a maximum term of confinement that was below the maximum term permitted by statute. While the court did express some uncertainty at times, we are not persuaded the record on this point requires a remand for a new dispositional hearing. (*Julian R.*, *supra*, 47 Cal.4th at pp. 498–499 [trial court order is presumed to be correct, and reviewing court must " 'apply the general rule "that a trial court is presumed to have been aware of and followed the applicable law" ' "].)

For example, at the August 24 hearing, in a statement highlighted by M.B., the court stated: "So let me set the maximum confinement time under

29

section 875(c), and that maximum period of confinement that could be imposed on [M.B.], pursuant to that statute, is 22 years to life." The court was correct to begin with the maximum term that could be imposed under the statute (which, as noted, was actually 22 years), but its written order makes clear it did consider the "facts and circumstances" of the case in deciding to set that term.

Also at the August 24 hearing, after stating that the maximum period of confinement that could be imposed was 22 years to life, the court stated: "I am not quite sure how to answer—to determine what the maximum period of confinement is. I guess the maximum period—I don't know whether this is a—this finding I have to make is with respect to the life term or with respect to the baseline term." The clerk stated, "I believe it's the life term, Your Honor," and the court continued, "I guess I'm assuming that the maximum period of confinement is the life term, and, therefore, the maximum period, as I've already indicated, is 22 years to life."

Although it is not entirely clear, we agree with the Attorney General that this passage may show only that the court "briefly believed there was a third term—a maximum *period* of confinement—and expressed confusion as to whether that period of confinement encompassed the maximum term of confinement or the baseline term." In any event, we are not persuaded these passages clearly show the court did *not* understand it had discretion to set a maximum term of confinement that was less than the maximum term permitted by statute.

M.B. also notes that, at the September 27 hearing, the court stated that it was reconsidering its September 14 order (where it had set a four-year maximum term of confinement) because it had "failed to comply with mandatory provisions governing the length of punishment." But this may

have meant the court believed it had misapplied the statute on September 14 in selecting a four-year maximum term of confinement, rather than a belief that it had *no* discretion to impose a maximum term of confinement that was less than the statutory maximum. Similarly, the court asked during the September 27 hearing whether the maximum term of confinement it set under section 875, subdivision (c) should simply be the middle term referenced in section 726, subdivision (d)(2). The prosecutor answered (as noted above) that section 875, subdivision (c) required the court to determine both the "maximum potential time" *and* "how much of that total time the Court's going to set at maximum confinement time . . . ."

Neither these nor the other record passages identified by M.B. persuade us that the court did not understand it had discretion to set a maximum term of confinement, based on the "facts and circumstances" of the case (§ 875, subd. (c)(1)), that was either equal to or lower than the maximum term permitted by statute. As it stated in its written order, the court determined, based on those "facts and circumstances," that the appropriate maximum term of confinement was the same as the maximum term allowed by statute (findings 13 and 14).[22]

---

[22] The court's express statement that it had considered the "facts and circumstances" of the case in setting the maximum term of confinement, as well as the prosecutor's statement the court could set a maximum term of confinement that was lower than the maximum allowed by statute, distinguish this case from *In re Sean W.* (2005) 127 Cal.App.4th 1177, cited by M.B. In *Sean W.*, the appellate court remanded for an exercise of discretion as to the maximum term of confinement under section 731, stating, "[t]he court, counsel, and the probation department indicated no awareness of court discretion in setting the maximum term of confinement." (*In re Sean W.*, at p. 1182; *id.* at p. 1179, 1188–1189.) That was not the case here. And, as noted, under *Julian R.*, even on a silent record, we would presume the trial court understood and exercised its discretion. (*Julian R., supra,* 47 Cal.4th at pp. 499, 492.)

31

As discussed, the court was mistaken as to what the statutory maximum was—it was 22 years, rather than 22 years to life. For the foregoing reasons, we will modify the court's August 24 order (as reinstated by the September 27 order) so that both the maximum period of confinement allowable by statute (finding 13) and the maximum term of confinement actually set by the court (finding 14) are 22 years (rather than 22 years to life).

## D. *Equal Protection Principles Do Not Require the Application of M.B.'s Precommitment Credits to the Baseline Term*

As noted, section 875, subdivision (c) provides that, when a ward is committed to an SYTF, the court must set a maximum term of confinement and apply the ward's precommitment credits to that term. (§ 875, subd. (c)(1)(C) ["Precommitment credits for time served must be applied against the maximum term of confinement as set pursuant to this subdivision."].) The juvenile court here, in its operative September 27 order, directed that M.B.'s precommitment credits be applied against the maximum term of confinement it had set under section 875, subdivision (c) (i.e., a term of 22 years to life, which we are reducing to 22 years).

M.B. argues on two grounds that equal protection principles require the application of his precommitment credits against the four-year baseline term of confinement that the court set under section 875, subdivision (b). First, he contends a failure to apply credits against the baseline term would treat wards committed to a county SYTF unequally in comparison to wards committed to the DJJ, because "the baseline term at an SYTF is the functional equivalent of the maximum term of confinement at DJJ." Second, he claims a failure to apply credits against the baseline term violates equal protection by penalizing wards whose cases take longer to resolve. We reject both arguments.

32

### 1. Legal Standards

The right to equal protection is violated when "the government . . . treat[s] a [similarly situated] group of people unequally without some justification." (*People v. Chatman* (2018) 4 Cal.5th 277, 288.) The degree of required justification depends on the classification at issue. Distinctions that involve suspect classifications (such as race) or affect fundamental rights are subject to strict scrutiny, and will be upheld only if they are necessary to achieve a compelling state interest. (*Ibid.*) But when "a statute involves neither a suspect class nor a fundamental right, it need only meet minimum equal protection standards, and survive 'rational basis review.' " (*People v. Turnage* (2012) 55 Cal.4th 62, 74.) Under that standard, "equal protection of the law is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.' " (*Ibid.*)

We review equal protection claims de novo. (*People v. Yang* (2022) 78 Cal.App.5th 120, 125.)

### 2. Alleged Equal Protection Violation Based on Differential Treatment of Wards Committed to DJJ and to County SYTFs

In support of his first equal protection argument (alleging differential treatment of wards based on whether they are committed to the DJJ or to an SYTF), M.B. relies on the recent decision by Division One of this court in *Ernesto L.*, *supra*, 81 Cal.App.5th 31. There, the appellate court held that, when a ward is committed to the DJJ, the ward's precommitment credits must be applied against the term *Ernesto L.* called the "maximum custodial term" set by the juvenile court under section 731, subdivision (b) " 'based upon the facts and circumstances,' " rather than against the term *Ernesto L.* called the "maximum exposure term" set by section 726, subdivision (d)(1). (*Ernesto L.*, at p. 34.)

The *Ernesto L.* court explained the two terms at issue in that case. First, in general, "if a minor is removed from a parent's physical custody after being adjudged a ward of the court, the dispositional order must 'specify that the minor may not be held in physical confinement for a period in excess of the middle term of imprisonment' that could be imposed on an adult convicted of the same offense.  [(§ 726, subd. (d)(1).)]"  (*Ernesto L.*, *supra*, 81 Cal.App.5th at p. 34.)  But for DJJ commitments in particular, "the juvenile court has discretion, 'based upon the facts and circumstances,' to set an even lower maximum term of physical confinement.  (§ 731, subd. (b).)" (*Ibid.*)  As noted, *Ernesto L.* held that, when a ward is committed to the DJJ, a juvenile court must apply precommitment credits against "the actual maximum term set under section 731" (the maximum custodial term), rather than against "the theoretical maximum term under section 726" (the maximum exposure term).  (*Id.* at pp. 34, 41.)

In reaching this conclusion, *Ernesto L.* interpreted section 731's requirement that a minor "not be confined" in excess of the maximum custodial term set by the court to refer to both precommitment and postcommitment physical confinement.  (*Ernesto L.*, *supra*, 81 Cal.App.5th at pp. 41–42; § 731, subd. (b) [ward committed to DJJ "shall not be confined in excess of the term of confinement set by the committing court"].)  The *Ernesto L.* court concluded this result followed from the reasoning of the California Supreme Court in *In re Eric J.* (1979) 25 Cal.3d 522, which had held similar language in former section 726 referred to both precommitment

and postcommitment physical confinement. (*Ernesto L.*, at p. 41, citing *Eric J.*, at p. 536.)[23]

M.B. argues that, "[b]ecause an SYTF commitment has now replaced a DJJ commitment," the application of precommitment credits should be similar in the two schemes. But as we read them, the statutes governing SYTF commitments and the application of precommitment credits in that context already do operate in the way *Ernesto L.* determined the statutes should operate in the DJJ context.

First, in both settings, section 726, subdivision (d)(1)—which generally applies when a minor is removed from the physical custody of a parent after being adjudged a ward—provides the dispositional order must "specify that the minor may not be held in *physical confinement* for a period in excess of the middle term of imprisonment" that could be imposed on an adult convicted of the same offense. (§ 726, subd. (d)(1), italics added; *Ernesto L.*, *supra*, 81 Cal.App.5th at p. 34.) Section 726 defines " '[p]hysical confinement' " to include both DJJ and SYTF placements, among other things. (§ 726, subd. (d)(5).)[24] The maximum period of confinement permitted by statute—the middle term of imprisonment that would apply to

---

[23] In its July 2022 opinion, the *Ernesto L.* court stated it was publishing its holding about the application of precommitment credits in the DJJ context because of its disagreement with a different Court of Appeal decision on that point (*In re A.R.* (2018) 24 Cal.App.5th 1076), although the *Ernesto L.* court "recognize[d] that most juveniles can no longer be committed to DJJ, which is set to close on June 30, 2023. (§ 736.5, subds. (b)–(c), (e).)" (*Ernesto L.*, 81 Cal.App.5th at p. 34, fn. 2.)

[24] Section 726, subdivision (d)(5) states: " 'Physical confinement' means placement in a juvenile hall, ranch, camp, forestry camp or secure juvenile home pursuant to Section 730, or *in a secure youth treatment facility pursuant to Section 875*, or *in any institution operated by the Department of Corrections and Rehabilitation, Division of Juvenile Justice*." (Italics added.)

an adult—is thus the same under section 726 for both types of commitments.[25] And section 875 states this same limitation for SYTF commitments in particular. (§ 875, subd. (i); see *id.*, subd. (c)(1)(B).)

Second, as discussed, the specific statutes governing DJJ and SYTF commitments—sections 731 and 875 respectively—give the juvenile court discretion, "based upon the facts and circumstances," to set a maximum term that is lower than the maximum permitted by statute. (§§ 731, subd. (b) ["maximum term"], 875, subd. (c)(1) ["maximum term of confinement"]; *Julian R., supra,* 47 Cal.4th at p. 495 [§ 731]; *Ernesto L., supra,* 81 Cal.App.5th at p. 34 [§ 731].) Sections 731 and 875 describe this maximum term in identical language, stating the term is to be "based upon the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the court and as deemed appropriate to achieve rehabilitation." (§§ 731, subd. (b), 875, subd. (c)(1).)

Finally, in both settings, precommitment credits are to be applied against the potentially lower maximum term set by the court. As discussed, for DJJ commitments, *Ernesto L.* held precommitment credits must be applied to this actual maximum term (what it called the "maximum custodial term"), concluding that result is compelled by the requirement in section 731, subdivision (b) that a ward must "not be confined" in excess of that term. (*Ernesto L., supra*, 81 Cal.App.5th at pp. 41–42.) And for SYTF commitments, section 875, subdivision (c) specifies precommitment credits "must be applied against the maximum term of confinement as set pursuant to this subdivision" (§ 875, subd. (c)(1)(C)), i.e., the maximum term set by the

---

[25] M.B.'s suggestion that section 726 applies to DJJ commitments but that SYTF commitments are governed by "a separate dispositional scheme" that *only* involves section 875 is incorrect.

36

court "based upon the facts and circumstances" (*id.*, subd. (c)(1), which may be lower than the maximum permitted by statute.

Section 875, subdivision (c) thus directs that, for SYTF placements, precommitment credits are to be applied in the same way *Ernesto L.* held they should be applied in the DJJ setting. As the Attorney General points out, there is no disparate treatment that could give rise to an equal protection problem.[26]

M.B. contends, however, that in the SYTF context, the *baseline term* set under section 875, subdivision (b) is the "functional equivalent" of the maximum custodial term that is set for DJJ commitments under section 731. He argues that therefore, to be consistent with *Ernesto L.* and prevent an equal protection violation arising from the disparate treatment of wards committed to SYTFs and to DJJ, his precommitment credits must be applied against the four-year baseline term.[27]

We disagree. In our view, the functional equivalent of the maximum custodial term for DJJ commitments (§ 731, subd. (b); *Ernesto L.*, *supra*, 81 Cal.App.5th at p. 34) is the maximum term of confinement set in the SYTF context under section 875, subdivision (c). As noted, sections 731 and 875

---

[26] Because DJJ and SYTF wards are not treated differently, we need not address the parties' arguments as to whether the two groups are similarly situated, or as to which legal standard—strict scrutiny or rational basis—should be used to analyze any alleged disparate treatment.

[27] There was some temporal overlap between the DJJ and SYTF commitment schemes. Although DJJ closed on June 30, 2023 (§ 736.5, subd. (e)), M.B. notes that, at the time of his SYTF commitment in 2022, he was eligible for a DJJ commitment because a motion to transfer his case to adult court had been filed prior to the closure of DJJ (*id.*, subds. (b)–(c)). He also notes some wards who were initially committed to DJJ may have been subsequently transferred to an SYTF after DJJ's closure (see §§ 875, subd. (b)(2), 736.5, subd. (d)).

describe those terms using identical language—in each case, the term is a *maximum* to be set by the court "based upon the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the court and as deemed appropriate to achieve rehabilitation." (§§ 731, subd. (b), 875, subd. (c)(1).)  And precommitment credits must be applied against those analogous maximum terms.  (*Ernesto L.*, at pp. 41–42; § 875, subd. (c)(1)(C).)

In contrast, the baseline term under section 875, subdivision (b), is not a maximum term.  Instead, it "represent[s] the time in custody necessary to meet the developmental and treatment needs of the ward and to prepare the ward for discharge to a period of probation supervision in the community." (§ 875, subd. (b)(1).)  Pending the development of offense-based classifications by the Judicial Council, the baseline term is to be set using (with some permitted deviation) the "discharge consideration date guidelines" applied by the DJJ prior to its closure (found in Cal. Code Regs., tit. 9, §§ 30807–30813). (§ 875, subd. (b)(1).)

Accordingly, even if it were necessary to identify functional equivalents as to each aspect of the now-phased-out DJJ and current SYTF schemes— and we do not think that is the case, since the Legislature is free to change the juvenile justice system over time—we agree with the Attorney General that the closest analogue of the SYTF baseline term is the set of DJJ discharge consideration date guidelines that are temporarily to be borrowed in setting the baseline term.  Those guidelines existed alongside the court's duty to set a maximum term for a ward committed to the DJJ under section 731, subdivision (b), just as a court that now commits a ward to an SYTF must set both a baseline term and a maximum term of confinement under section 875, subdivisions (b) and (c).

38

M.B. argues there are differences between the application of the discharge consideration date guidelines in the DJJ context and the baseline term in the SYTF setting. Specifically, he notes that, under the applicable regulations, a parole consideration date is not "a fixed parole release date." (Cal. Code Regs., tit. 9, § 30815, subd. (a).) In contrast, he argues, a baseline term creates "a presumptive release date." He relies on section 875, subdivision (e)(3), which states that, at a "probation discharge hearing" to be held at the conclusion of the baseline term, the court "shall order that the ward be discharged to a period of probation supervision in the community under conditions approved by the court, unless the court finds that the ward constitutes a substantial risk of imminent harm to others in the community if released from custody." In that circumstance, the ward may be retained in an SYTF for up to one additional year. (§ 875, subd. (e)(3).) M.B. argues that, in light of this provision, the baseline term is "akin to a fixed release date from an SYTF," except in "exceptional circumstances" where the court finds the ward's release would endanger the community.

Although the parties debate how frequently courts are likely to make the findings necessary to deny probation under section 875, subdivision (e)(3), we need not consider that question. We are not persuaded that any differences between the SYTF baseline term and the DJJ parole consideration guidelines somehow transform the baseline term into the equivalent of a maximum term. As discussed, the SYTF scheme has its own detailed provisions governing the setting of a maximum term of confinement (§ 875, subd. (c); see *id.*, subd. (i)), and the fact that other provisions may allow a ward to be released before the expiration of that term does not change that maximum. And, even if M.B. is correct that the probation discharge provisions in section 875, subdivision (e) make the SYTF scheme *more*

39

favorable than the DJJ parole discharge system, that does not create an equal protection issue requiring application of precommitment credits to the baseline term.

We also disagree with M.B.'s reading of *Ernesto L.* As noted, that case's holding requiring application of precommitment credits against the maximum term set by the court (rather than against the maximum term permitted by statute) was based on the text of section 731, subdivision (b), which specifies a ward committed to DJJ must "not be confined" beyond the maximum term set by the court. (*Ernesto L.*, *supra*, 81 Cal.App.5th at pp. 41–42.) *Ernesto L.* did not announce a general rule that precommitment credits must be applied to any term that may be said, in M.B.'s phrasing, to be "akin to a fixed release date." In the SYTF context, it is the section 875, subdivision (c) maximum term of confinement that sets the limit on the length of a ward's confinement; the section 875, subdivision (b) baseline term is not described as, and does not function as, a maximum term. No equal protection problem arises from applying precommitment credits to the maximum term set by the court under both schemes. (§§ 731, subd. (b), 875, subd. (c)(1)(C).)

Finally, M.B. suggests section 875 does not prohibit the application of precommitment credits against the baseline term. But we think it is clear the application of precommitment credits against the baseline term is not intended. Section 875, subdivision (c)(1)(C) expressly states precommitment credits are to be applied against the maximum term of confinement (and does not state they are to be applied against the baseline term). And other provisions of the statute provide for application of credits to the baseline term in specified circumstances, not including credits for time spent in precommitment custody. (§ 875, subds. (f)(2) [if a ward is transferred from an

40

SYTF to a less restrictive placement and then back to an SYTF, the baseline term is to be "adjusted to include credit for the time served by the ward in the less restrictive program"], (b)(2) [youth who are transferred from the DJJ to an SYTF shall receive credit against the baseline term "for all programs completed or substantially completed" at the DJJ].)  The court here correctly applied M.B.'s precommitment credits against the maximum term of confinement, rather than against the baseline term.

### 3. Alleged Equal Protection Violation Based on the Length of Time Cases Take To Resolve

M.B. contends the failure to apply precommitment credits against the SYTF baseline term would violate equal protection "by penalizing wards whose cases take longer to resolve."  He notes the length of time a case takes may depend on a number of variables, such as the complexity or closeness of the matter or how busy a given court is.  M.B. observes that a ward who spends about two years in precommitment custody (as M.B. did) and then serves a four-year baseline term in an SYTF will spend more total time in custody than a ward who spends two months in precommitment custody and then serves a four-year SYTF baseline term.  Finally, M.B. asserts that application of precommitment credits against the maximum term of confinement is an "illusory" benefit "because, as a result of the age limitations on confinement set forth in section 875, most ward[s] never near their maximum periods of confinement."  (See § 875, subd. (c)(1)(A) [age limitations].)  As a result, M.B. asserts, the time spent in precommitment custody is " 'dead time.' "

We do not agree that application of precommitment credits to the maximum term of confinement is an illusory benefit.  In some cases, a ward's maximum term of confinement may end before the ward reaches the applicable age limit, so the application of precommitment credits to the

41

maximum term of confinement will shorten the amount of time the ward spends in custody. In addition, section 875 provides that, during a ward's term of commitment to an SYTF, the court is to hold a progress review hearing at least every six months. (§ 875, subd. (e)(1)(A).) At the hearing, the court "shall evaluate the ward's progress in relation to the rehabilitation plan and shall determine whether the baseline term of confinement is to be modified." (*Ibid.*) At the hearing, the court may also order that the ward be assigned to a less restrictive program. (*Ibid.*) A ward who has served significant precommitment time or who can show significant rehabilitative progress made during that time may be able to show (in conjunction with other factors, including rehabilitative progress while in an SYTF) that he or she is a good candidate for a shortened baseline term or a transfer to a less restrictive program.

In any event, M.B.'s arguments about the perceived deficiencies of the statutory provisions governing precommitment credits do not establish an equal protection violation. There is no basis to conclude that wards receive disparate treatment under the rule that precommitment credits are to be applied against the maximum term of confinement rather than against the baseline term. (§ 875, subd. (c)(1)(C).) The two sets of SYTF wards identified by M.B. as the foundation of his equal protection claim—"those whose cases resolve slowly and those whose cases resolve quickly"—are treated equally. For both sets of wards, precommitment credits are applied to their maximum terms of confinement. (*Ibid.*) Neither group has their baseline terms reduced based on precommitment credits. Both are potentially eligible for discharge to probation upon completion of their baseline terms. (*Id.*, subd. (e)(3).) And for both groups, the precommitment credits apply to a maximum term of

confinement they may not reach because they may age out of the SYTF by that time. (*Id.*, subd. (c)(1)(A).)

To the extent a ward may in some instances spend more total time in custody than another ward with a similar baseline term, that is because of the numerous variables that can affect the length of precommitment custody, not because section 875 provides for the unequal application of credits. Unlike the schemes at issue in *People v. Sage* (1980) 26 Cal.3d 498, 507–508 and *People v. Yang, supra,* 78 Cal.App.5th at pp. 129, 136–138 (cases cited by M.B.), section 875 does not deny credits to certain groups while granting them to others. There is no disparate treatment here and no equal protection violation.

### III. DISPOSITION

The juvenile court's August 24, 2022 disposition order, as modified and reinstated by the juvenile court on September 27, 2022, is modified as follows:

(1) "the maximum period of confinement that could be imposed" under section 875 (finding no. 13 on the attachment to the August 24, 2022 order) is modified to 22 years (rather than 22 years to life); and

(2) the maximum term of confinement set by the court based on "the individual facts and circumstances of the case" (finding no. 14 on the attachment to the August 24, 2022 order) is modified to 22 years (rather than 22 years to life).

In all other respects, the August 24, 2022 order, as modified and reinstated by the juvenile court on September 27, 2022, is affirmed. In particular, the court's ruling in the September 27, 2022 order that precommitment credits for time served are to be applied against the

maximum term of confinement set by the court under section 875, subdivision (c) is affirmed.

STREETER, Acting P. J.

WE CONCUR:

GOLDMAN, J.
SMILEY, J.*

---

* Judge of the Superior Court of California, County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:   Superior Court of California, County of San Francisco

Trial Judge:   Hon. J. Anthony Kline

Counsel:       Sangeeta Sinha, under appointment by the Court of Appeal, for
                   Defendant and Appellant.

               Rob Bonta, Attorney General, Lance E. Winters, Chief
                   Assistant Attorney General, Jeffrey M Lawrence, Senior
                   Assistant Attorney General, Donna M Provenzano,
                   Supervising Deputy Attorney General, and Victoria
                   Ratnikova and Amit Kurlekar, Deputy Attorneys General,
                   for Plaintiff and Respondent.

*In re M.B.* – A166408